UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>REVELATION CAPITAL MANAGEMENT LTD. and CHRISTOPHER P.C. KUCHANNY,<br><br>  Defendants. | 14 Civ. 0645 (VEC) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO STRIKE DEFENDANTS' EXPERT REPORT AND PRECLUDE THE
<u>EXPERT FROM TESTIFYING</u>**

Plaintiff, the Securities and Exchange Commission ("SEC"), submits this memorandum in support of its motion to strike the report of Defendants' expert Dennis Dumas and for an order precluding Dumas from testifying. The SEC relies for its motion on Federal Rules of Evidence 401, 402 and 403 (relevance, confusion, waste of time) and 702 and 703 (expert witnesses).

The Dumas Report -- which offers nothing but the (erroneous) legal conclusion that exercising jurisdiction over the Defendants is "not consistent with the factors considered by market participants in evaluating jurisdictional reach and choice of law" -- fails to address any issue to be decided by the jury, is untethered to any concrete principles or objective criteria and, if taken seriously as a report by an expert, is otherwise inadmissible. The Report is merely a vehicle for the Defendants to introduce

legal arguments unbounded by any actual law and to have an "expert" attorney offer helpful opinions based on nothing more than his unexplained and unspecified "industry experience" as a lawyer. These "opinions" are legal determinations within the sole province of the Court. The Report should be stricken in its entirety and its author precluded from testifying in the event of a trial.

## FACTS

The sole claim in this matter alleges that the Defendants, Revelation Capital Management Ltd., and its principal Christopher P.C. Kuchanny (collectively "Defendants"), unlawfully participated in an offering in the securities of Central Fund of Canada Limited ("Central Fund"), after engaging in short sales of those securities in violation of Rule 105 of the SEC's Regulation M [17 C.F.R. §242.105]. In order to prevent manipulative short selling of securities prior to follow-on and secondary public offerings, Rule 105 provides that a person may not purchase shares issued in those offerings if they have previously sold short those same securities in the defined restricted period prior to that offering. In this matter, the restricted period was five business days prior to the pricing of the offering shares. See Complaint ¶14.

The facts surrounding Defendants' short sales and subsequent offering purchases are not in material dispute. By shorting the Central Fund securities and later purchasing offering shares of the same securities at lower prices, the complaint alleges that Defendants illicitly profited by more than $1.3 million. Defendants contend their trading activity was permissible because the offering was conducted on a "best efforts" basis, and thus was beyond the reach of Rule 105. Defendants further contend that all the relevant

conduct took place outside the United States and therefore U.S. securities laws are inapplicable.

Defendants hired attorney Dennis Dumas to serve as an expert witness in this case. But Dumas offers no opinions relevant to the substance of Defendants' trading activity, the nature of the offering, or any other pertinent factual issue. Instead, the entire report is devoted to the legal question of whether the Court has jurisdiction over the Defendants or their alleged misconduct. The Report, attached hereto as Exhibit 1, describes its mission as follows:

> I was engaged by . . . counsel for the Defendants to serve as an expert in this matter to analyze and critique certain factors relating to the exercise of extraterritorial jurisdiction over the Defendants in the Litigation.

Exhibit 1, ¶ 3, "Scope of My Assignment."

Dumas' qualifications are those of a lawyer -- his pertinent education and employment history consist of his law degree and experience as a practicing attorney in the international securities industry at law firms and in government and corporate settings. (Ex. 1, ¶ 6). His sole publication on the subject of jurisdiction appeared in 1996 in a legal journal, the <u>University of Pennsylvania Journal of International Business Law</u>. (Ex. 1, ¶ Exhibit 2).

The Report asserts that "[i]n evaluating jurisdictional reach and choice of law in multinational securities market fact patterns, practitioners in the field consider the location of the transaction in question and the conduct and effects of the relevant parties." (Ex. 1, ¶ 29). The Report purports to summarize facts bearing on these considerations, including the Defendants' country of residence, the location of Central Fund, the negotiations leading up to the offering, the executed agreements, as well as Defendants'

3

short sales. (Ex. 1, ¶ 30). On the claimed basis that the only conduct that took place in the United States was the execution of the short sales, Dumas concludes that exercising jurisdiction over the Defendants is "not consistent with the factors considered by market participants in evaluating jurisdictional reach and choice of law." (Ex. 1, ¶ 31).

Nowhere does the Report identify any statute, case law or other authority that Dumas relies upon for his jurisdictional analysis. In fact, the Report identifies no basis at all for its conclusions other than Dumas' *ipse dixit* based on his experience as a lawyer. While the Report suggests the existence of some conflict of law, when questioned Dumas could identify no particular provision of any foreign law purportedly in conflict with Rule 105. (Ex. 2, Deposition of Dennis Dumas, 45:11-48:16). Dumas admits that the question of whether jurisdiction is properly asserted here is a legal determination for the Court. (Ex. 2, Dumas Dep. 49:13-50:8). Notwithstanding his acknowledgement that his Report speaks to a pure question of law, Dumas offers an assessment of what he claims to be the "key" facts regarding jurisdiction, which he determines without regard to any legal principle or standard other than his unspecified "experience" regarding how the facts are assessed "in the context of business transactions." (Ex. 2, Dumas Dep. 81:1-81:22). When asked whether he had reviewed <u>Morrison v. National Australia Bank</u>, 561 U.S. 247 (2010) -- the Supreme Court's seminal decision on the subject of federal court jurisdiction over claimed violations of the federal securities laws involving international transactions -- Dumas testified that "[w]ell I'm familiar with – with – with the authority, but I did not do a – a analysis of the law in connection with developing this opinion." (Ex. 2, Dumas Dep. 63:6-63:12).

**ARGUMENT**

Trial judges are charged as gatekeepers to exclude unreliable, irrelevant or unnecessary expert testimony. See note, 2000 Amendments to Fed. R. Evid. 702, citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and Kumho Tire Co. v. Carmichael, 526 U.S.137 (1999). The testimony of a qualified expert is admitted only when it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The proponent of the testimony has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. Bourjaily v. U.S., 483 U.S. 171, 175-76 (1987).

"[U]nder the Rules the trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589; Nook v. Long Island R.R. Co., 190 F. Supp. 2d 639, 641 (S.D.N.Y. 2002); see also Kumho, 526 U.S. at 141, n.1 ("[T]he trial judge's general 'gatekeeping' obligation [established by Daubert] applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."). Rule 702 further requires that the evidence or testimony be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Daubert, 509 U.S. at 591 (citation omitted).

Expert testimony also is subject to Rule 403, and may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Daubert, 509 U.S. at 595. "The Second Circuit has made it plain that it strictly enforces the limitations placed by the rules of evidence upon expert opinion testimony ...." Kidder, Peabody & Co. v. IAG Int'l Acceptance Group

5

N.V., 14 F. Supp. 2d 391, 402 (S.D.N.Y. 1998).  Because "[e]xpert evidence can be both powerful and quite misleading … the judge in weighing possible prejudice against probative force under Rule 403 … exercises more control over experts than over lay witnesses."  Daubert, 509 U.S. at 595 (quotation omitted).

I.   DUMAS' REPORT OFFERS NOTHING
     BUT IMPERMISSIBLE LEGAL OPINION

"Each courtroom comes equipped with a 'legal expert' called a judge." In re Initial Public Offering Sec. Lit., 174 F.Supp.2d 61, 69, n. 11 (S.D.N.Y. 2001) (quoting Burkhart v. Washington Metro. Area Trans. Auth., 112 F.3d 1207, 1213 (D.C. Cir. 1997)).  See also Hygh v. Jacobs, 961 F.2d 359, 363-64 (2d Cir. 1992).  An expert may not "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."  United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991).  Expert testimony on the law is excluded because the special legal knowledge of the judge makes such testimony superfluous, and because it invades the province of the Court.  Marx & Co. v. Diner's Club, Inc., 550 F.2d 505, 509-10 (2d Cir. 1977).

Determinations of subject matter and personal jurisdiction are questions of law for the Court.  Katz v. Goodyear Tire and Rubber Co., 737 F.2d 238, 243 n. 2 (2d Cir.1984) (question of jurisdiction need not be submitted to a jury).  Here, Dumas' proposed testimony is irrelevant and unhelpful to any issue to be decided by the jury.  It is being proffered solely to usurp the role of the Court by instructing the fact-finder on the law.  Moreover, even with regard to the jurisdictional analysis for the Court, the Report cannot

6

assist any necessary determination of the facts and circumstances at issue.[1]  After all, Dumas has no first-hand knowledge of the facts and circumstances of this case.  He can only offer his subjective belief regarding the legal significance of facts provided to him by defense counsel.  But that subjective belief is not the proper province of expert testimony.  "[T]he expert testimony of an attorney as to . . . the legal significance of facts is inadmissible."  Motown Prods., Inc. v. Cacomm, Inc., 668 F.Supp. 285, 288 (S.D.N.Y.1987), rev'd on other grounds, 849 F.2d 781 (2d Cir.1988).  And Dumas cannot transform his legal judgments into admissible expert testimony by couching legal opinions in terms of "industry practices."  As the Second Circuit has noted, "testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice."  Bilzerian, 926 F.2d at 1295.

## II.     THE DUMAS REPORT IS UNRELIABLE

An expert must apply his methodology reliably.  Fed. R. Evid. 702(c).  "*[A]ny* step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible."  Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267(2d. Cir. 2002).  No studies, literature, trade association standards or standards of any kind are cited or relied upon for Dumas' conclusions.  Nor is there any reference to any statutes, cases or other legal authority.  The Dumas Report merely purports to assess the jurisdictional question as follows: "[i]n evaluating jurisdictional reach and choice of law in multinational securities market fact patterns, practitioners in the field consider the location of the transaction in question and the conduct and effects of the relevant parties."

---

[1] See National Artists Management Co., Inc. v. Weaving, 769 F.Supp. 1224, 1228 (S.D.N.Y. 1991) (the district court may gather the evidence relevant to jurisdiction "either by live testimony or by deposition and affidavit; the determination is one made by the court").

7

(Ex. 1, ¶ 29).  Dumas thus invokes factors similar to those of "conduct" and "effects" tests which, prior to the Supreme Court's decision in Morrison, were the legal standard in the Second Circuit -- (1) the "effects test," where jurisdiction was found depending on "whether the wrongful conduct had a substantial effect in the United States or upon United States citizens," and (2) the "conduct test," where jurisdiction may lie depending on "whether the wrongful conduct occurred in the United States." SEC v. Berger, 322 F. 3d 187, 192-93 (2nd Cir. 2003).

But under Morrison, these factors are inapplicable to the conduct at issue here.  In Morrison, the Supreme Court carefully considered -- and then expressly rejected -- the analytical framework that undergirds Dumas' report.  The Supreme Court instead held that jurisdiction is found in claims involving securities fraud based upon where a securities transaction took place – "whether the purchase or sale is made in the United States, or involves a security on a listed domestic exchange," given the statutory focus on purchases and sales of securities.[2]  Morrison at 269-70.  Rule 105 similarly focuses on the trading transaction -- it makes "unlawful" for any person "to sell short . . . the security that is the subject of the offering. . . ."  Any reasonable application of Morrison leads to the conclusion that the undisputed short selling conduct of the Defendants in this case confers jurisdiction in the United States.  By embracing an inapplicable "conduct and

---

[2]   On July 21, 2010, after the conduct at issue in this case, the Dodd-Frank Wall Street Reform and Consumer Protection Act took effect and, among other things, reinstated the conducts and effects tests for enforcement actions brought by the Commission or the Department of Justice. Pub. L. No. 111-203, Section 929P(b), 124 Stat. 1376 (2010).   Section 929P(b)(2) of Dodd-Frank amended Section 27 of the Exchange Act to provide federal courts with jurisdiction to hear claims concerning violations of the federal securities laws brought by the Commission or the Department of Justice that involve "(1) conduct within the United States that constitutes significant steps in furtherance of the violation, even if the violation is committed by a foreign advisor and involves only foreign investors; or (2) conduct occurring outside the United States that has a foreseeable substantial effect within the United States."  15 U.S.C. §78aa(b).  This provision is not retroactive, however, and therefore, the Morrison transactional test applies to Defendants' conduct in November 2009.

8

effects" analysis expressly rejected by the Supreme Court, the Dumas Report proves itself unreliable even as a legal analysis -- it is a legal analysis reliant on irrelevant authority.

### III.     THE DUMAS REPORT IDENTIFIES NO CONFLICT OF LAW

Finally, there is no analysis of foreign law in the Report that would render its admission proper pursuant to Federal Rule of Civil Procedure 44.1, which permits the Court to "consider any relevant material or source" in making foreign law determinations."  Under Rule 44.1 the Court "may rely on its own research and any submissions from the parties when considering foreign law." Nat'l Group for Commc'ns and Computers. Ltd., v. Lucent Techs. Int'l., Inc., 331 F.Supp.2d 290, 294 (D.N.J. 2004). The Court may seek the aid of expert witnesses and consider material that would be inadmissible at trial. Id; see also, Sidali v. I.N.S., 107 F.3d 191, 198 n. 10 (3d Cir.1997). But while the Court may use an expert report to determine substantive foreign law, it may not use such materials in determining facts. ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc., 198 F.Supp.2d 598, 623 (E.D. Pa. 2002).  And it is within the Court's discretion to "reject even the uncontradicted conclusions of an expert witness and reach [its] own decisions on the basis of independent examination of foreign legal authorities." Nat'l Group, 331 F.Supp.2d at 294.

While ordinarily the Court might have discretion to consider expert testimony on questions of foreign law, the Dumas Report identifies no such laws in alluding to a "conflict of laws."  When questioned, Dumas could identify no particular provision of any foreign law purportedly in conflict with Rule 105.  (Ex. 2, Dumas Dep. 45:11-48:16). Instead, he merely pointed out the uncontroversial fact that other foreign countries do not

9

have an analogous rule. Dumas identifies no question of foreign law necessitating expert testimony.

### IV. THE REPORT IS PREJUDICIAL, CONFUSING AND A WASTE OF TIME

If the Report were deemed relevant (which it is not), then it is inadmissible under Federal Rule of Evidence 403 because it is prejudicial, confusing, and its consideration would be a waste of time. It is prejudicial and confusing because it refers to evidence and facts that are irrelevant to any determination relevant to the trier of fact in this case; is devoid of any reference to authoritative sources or citations; and relies on an analytical framework expressly rejected by the Supreme Court. The Dumas Report, and associated testimony, is unreliable, serves no proper purpose, and should be excluded in its entirety.

### CONCLUSION

For all the foregoing reasons, the SEC's motion to strike the Dumas Report and for entry of an order precluding Dumas from testifying in this matter should be granted.

Respectfully submitted,

\_\_\_\_/S/ Charles Stodghill\_\_\_\_
Charles D. Stodghill (pro hac vice)
Lauren B. Poper
Division of Enforcement
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
(202) 551-4413 (Telephone)
(202) 772-9246 (Facsimile)
E-Mail: stodghillc@sec.gov

Attorneys for Plaintiff

Dated: September 9, 2015