# Exhibit 1

SECURITIES AND EXCHANGE COMMISSION,

(Plaintiff),

v

REVELATION CAPITAL MANAGEMENT LTD. AND CHRISTOPHER P.C. KUCHANNY,

(Defendants).

Case 1:14-cv-00645-VEC

Corrected Expert Report of Dennis Dumas

July 20, 2015

This report has been prepared solely in connection with the above-referenced Litigation and is not intended for use or reliance in any other context.

Scope of My Assignment

1.      Bates Group, LLC ("Bates") was engaged on behalf of the Defendants Revelation Capital Management Ltd. ("Revelation") and its Chairman, Chief Executive Officer, Chief Investment Officer and sole shareholder, Christopher P.C. Kuchanny ("Kuchanny")  in the above-referenced litigation (the "Litigation").

2.      On January 31, 2014, Plaintiff Securities and Exchange Commission ("SEC") filed a complaint against Defendants alleging violations of SEC Rule 105 and seeking fines and sanctions against the foreign Defendants with respect to their participation in the offering of securities of a foreign corporation.

3.      Through Bates, I was engaged by Seward & Kissel LLP, counsel for the Defendants, to serve as an expert in this matter to analyze and critique certain factors relating to the exercise of extraterritorial jurisdiction over the Defendants in the Litigation.  In addition, I will respond to any opinions and/or testimony that Plaintiff or its experts may provide during the course of the Litigation.

4.      This report, and the opinions and conclusions expressed herein, are based on certain documents produced in this Litigation, my personal education, and my professional and business experience. The materials I considered in preparing this report are of the type reasonably relied on to evaluate factors of this type.  All of the documents that I considered in preparing this report are listed in Exhibit 1 hereto.   This report reflects work completed and documents considered through the date of this report.  I reserve the right to supplement this report should additional information come to my attention as the Litigation progresses.

This report has been prepared solely in connection with the above-referenced Litigation and is not intended for use or reliance in any other context.

5.      This report has been prepared solely in connection with the above-captioned Litigation.  Its use is limited to the above-captioned Litigation and should not be cited or relied upon in any other context.

My Qualifications

6.      I currently am a consulting expert with Bates Group LLC and President, General Counsel and Chief Compliance Officer of Avila Capital Markets, Inc.  I earned a Bachelor of Science in Physics degree in 1979 and a Juris Doctor in Law degree in 1982 from Duke University.  I have over 31 years of international securities industry experience in law firm and corporate settings including banking and brokerage organizations.  My background and qualifications are found on my curriculum vitae attached as Exhibit 2 hereto.  I have not previously testified or served as an expert witness in a case or at trial.

7.      I have no financial interest in the outcome of this Litigation, and my compensation is in no way contingent on my opinions. I am being compensated at the rate of $550 per hour. The work performed by my staff assisting me in preparing this report is billed at rates ranging from $70 to $250 per hour.

BACKGROUND

Defendants

8.      Kuchanny is a citizen of the United Kingdom.  He attended the London School of Economics, and upon graduation was employed by ABN AMBRO in London as a senior proprietary trader 1998 to 2003.  He moved to Bermuda to establish his own hedge fund, Revelation (formerly named Osmium), using his earnings at ABN AMBRO as capital. He has been a Bermuda resident since 2004. (Kuchanny 7-9)

9.      Defendant Revelation was organized in Bermuda in 2004 under Bermuda law, registered with and supervised by the Bermuda Monetary Authority. (Kuchanny 14) Kuchanny is also registered with the Bermuda Monetary Authority. (Kuchanny 14)  Revelation files periodic reports with the Bermuda Monetary Authority, has no U.S. offices, and is not registered with or regulated by the SEC. (Kuchanny 13) Kuchanny is the owner of and served as the CEO and Chief Investment Officer of Revelation. (Kuchanny 38)

10.     Revelation's strategy was a non-directional spread trading strategy.  (Kuchanny 11, 45-46)

11.     Revelation managed and directed trading in Revelation Special Situations Fund (the "Fund"), also organized in Bermuda under Bermuda law. (Kuchanny 7, 15) Dundee Leeds, subsidiary of Canadian listed bank Dundee Corporation, was administrator of the Fund. (Kuchanny 24)

12.     In 2004, Revelation retained UBS AG London ("UBS London"), incorporated under the laws of Switzerland and acting through its London branch, to act as its prime broker and custodian of all its assets. (Account opening docs, Kuchanny 19) UBS London served as Revelation's prime broker ever since.  (Kuchanny 19)

13.     Revelation used 30 to 50 executing brokers worldwide for various purposes.  All cleared and settled through UBS London.  (Kuchanny 20) Revelation has traded in 40 different countries over the last ten years. (Kuchanny 149)  One of the executing brokers clearing through UBS London was MF Global based in New York City. (Kuchanny 21, 49-51)

This report has been prepared solely in connection with the above-referenced Litigation and is not intended for use or reliance in any other context.

The Issuer

14.    Central Fund of Canada Limited ("Central Fund" or the
"Company") is a gold and silver bullion holding company which holds
bullion for the long term, for its owners, in Canada, in the vaults of the
Canadian Imperial Bank of Commerce in segregated safekeeping.
(Spicer 18, Prospectus 20)  Central Fund was incorporated in Canada in
1961 under the laws of the Province of Ontario as an investment
holding company, and in 1990 was continued under the laws of the
Province of Alberta.  (Prospectus 5)  Central Fund's head office and
principal place of business is located in Calgary, Alberta. (Prospectus 1)
Central Fund is governed by the *Business Corporations Act* (Alberta).
All of Central Fund's assets are located in Canada and, as such, are
outside of the United States, and all of its directors and officers are
residents of Canada or other jurisdictions outside of the United States.
(Prospectus S-9)

15.    Central Fund's main regulator is the Alberta Securities
Commission, and it files with all the provincial regulators across
Canada, including the Ontario Securities Commission.  It also files with
the SEC through the Multi-Jurisdictional Disclosure System (MJDS).
(Spicer 28)

16.    Central Fund's stock is traded on the Toronto Stock Exchange
("TSX") and New York Stock Exchange ("NYSE").  (Spicer 18)  The
outstanding Class A Shares are listed and posted for trading on the TSX
under the symbols "CEF.A" (Cdn.$) and "CEF.U" (U.S.$), and on the
NYSE Amex under the symbol "CEF".  (Prospectus Supp 1)

17.    Central Fund holds at least 90% of its assets in gold and silver at
all times in its vaults in Canada.  (Spicer 19)  Central Fund calculates and

This report has been prepared solely in connection with the above-referenced Litigation and is not
intended for use or reliance in any other context.

publishes its Net Asset Value daily, based on the day's London gold and silver bullion benchmark multiplied by the number of ounces of each precious metal physically held by the company plus any cash deposits owned by the company. (Spicer 20-21)

18.    When Central Fund offers its shares, the offering price is based upon the market price it can buy bullion and the resulting calculation of its bullion positioning net asset value, adding all the costs of issuance to that price, and then striking a price that is non-dilutive to the existing owners' interests.  The current share price of the outstanding shares does not affect the offering price. (Spicer 47)

19.    Central Fund prepares its prospectus in accordance with the laws of Canada.  (Prospectus 1)  As a foreign private issuer, Central Fund is exempt from the rules under the U.S. Exchange Act prescribing the furnishing and content of proxy statements, and the Company's Officers, Directors and Principal Shareholders are exempt from the reporting and short-swing profit recovery provisions contained in Section 16 of the U.S. Exchange Act. In addition, Central Fund is not required to publish financial statements as promptly as United States companies.  (Prospectus S-5)

20.    Central Fund's underwriter in the offering was CIBC World Markets Inc. ("CIBC"), a Canadian broker-dealer and affiliate of Canadian Imperial Bank of Commerce, the bank physically holding Central Fund's bullion in its vaults in Canada in segregated safekeeping. (Spicer 18, Prospectus 20)

This report has been prepared solely in connection with the above-referenced Litigation and is not intended for use or reliance in any other context.

The November 10, 2009 Central Fund Offering

21.  Before the close of the markets at 4:00 P.M. on November 9, 2009, Central Fund and CIBC executed an engagement letter governed by Canadian law, with the parties submitting to the jurisdiction of the Province of Alberta, in which CIBC agreed to act on behalf of Central Fund in the offering of Central Fund stock.  (Spicer 43-46, Smith 38, Exhibit 8)

22.   After the close of the markets on November 9, 2009, the Central Fund first announced an offering of Class A shares with the offering price to be determined on the morning of November 10, 2009, that would reflect an approximately 5.5% premium to the Net Asset Value of the Company.   (November 9, 2009 Release)  According to the announcement, the Net Asset Value of the Company would be calculated using the "landed" price at which new gold and silver bullion, in connection with the issue, could be purchased on November 10, 2009 for settlement on or about the closing date ("landed" price to include transportation, insurance, positioning, delivery and verification costs). (November 9, 2009 Release)

23.   After the close of the markets on November 9, 2009, CIBC and Central Fund engaged in an overnight marketed offering.  CIBC obtained commitments and agreed with purchasers on size and price of the commitments, determined bullion prices, set the net asset value, confirmed orders with purchasers, ordered bullion and determined the price of the offering before the markets opened November 10, 2009. (Scott 32-45, 77)   The offering price was not based on the market price of existing shares.  (Scott 70-71)

This report has been prepared solely in connection with the above-referenced Litigation and is not intended for use or reliance in any other context.

24.    Central Fund and CIBC executed the underwriting agreement for the offering the afternoon of November 10, 2009. (Scott 79, Exhibit 20) All the negotiations took place in Canada. (Scott 80-81)

25.    The closing of the underwriting took place in Toronto with Central Fund delivering the shares to CIBC. (Spicer 73)  16,975,000 shares of Central Fund were deposited with the Canadian Depository for Securities Ltd. on November 17, 2009. (Thursday, June 25, 2015 email from Michael Borland, Chief Legal Officer, The Canadian Depository for Securities Ltd., to Jack Yoskowitz).

26.    The US conduct in the offering was CIBC's US affiliate in New York coordinating with CIBC Canada on orders coming in from the US, (David Scott, p 56), and the filing of the Canadian prospectus with the SEC using a multijurisdictional disclosure system adopted by the United States and Canada. (Smith 86-87)

Revelation's Hedge Transaction

27.    From November 3-9, 2009, Revelation executed short sales of Central Fund through the WEX platform and the executing broker was MF Global utilizing the U.S. markets. (Kuchanny 21)  These short sales were both in CEF (traded in the United States) and CEF.A (traded in Canada). (Answer 5)  This was a part of a hedge transaction where Revelation also purchased underlying gold and silver due to an unusually high premium in the Central Fund share price to the net asset value of the gold and silver in the vaults at CIBC in Canada. (Kuchanny 131, 146-147)

This report has been prepared solely in connection with the above-referenced Litigation and is not intended for use or reliance in any other context.

Revelation's Participation in the Offering

28.    Revelation on behalf of the Fund participated in the November 10, 2009 Central Fund offering.    (Kuchanny 80)  Revelation first received notice of the offering as did the rest of the market and an offer to participate after the close of the markets on November 9, 2009. CIBC representatives in Canada solicited Revelation in Bermuda, and Kuchanny had a series of email and telephone communications thereafter directly with CIBC representatives in Canada.  (Kuchanny 87-88, 102-121; Smith 119).  Kuchanny agreed with Scott Smith of CIBC in Canada to buy $56 million of the offering with a premium over Net Asset Value of 5.5% before the markets opened on November 10. (Kuchanny 99)  The share price of Central Fund was irrelevant to this determination.  (Kuchanny 111-112, 118-120)  For the purposes of the offering CIBC Canada treated Revelation as an offshore non-US entity. (Smith 144)

## DISCUSSION

29.    In evaluating jurisdictional reach and choice of law in multinational securities market fact patterns, practitioners in the field consider the location of the transaction in question and the conduct and effects of the relevant parties.

30.    A summary of the key facts bearing upon these considerations follow:

- Revelation is located and conducts its business in Bermuda and is regulated by the Bermuda Monetary Authority.
- Kuchanny is a citizen of the United Kingdom residing in Bermuda.

- Central Fund's business is local to Canada and consists of purchasing and holding gold and silver bullion.
- A Canadian underwriter and affiliate of the Canadian bank holding Central Fund's bullion led the offering.
- The offering agreements were negotiated and executed in Canada, and the closing took place in Canada with the shares certificates deposited in a Canadian depository.  The prospectus and offering documents utilized in the offering were governed by the laws of Canada, filed in Canada, and filed in the United States through the multijurisdictional disclosure system.
- Central Fund's underwriter in Canada solicited Revelation in Bermuda to participate in the offering, and all negotiations leading up to the agreement between the Canadian underwriter and Revelation, for Revelation's purchase of shares in the offering, occurred between Canada and Bermuda.
- The only Defendant conduct that occurred in the United States is the execution at a United States broker-dealer of short sales for Central Fund stock before the announcement of the offering.  This was done as part of a normal hedge transaction involving offsetting positions in the underlying gold and silver bullion.
- The shorting of Central Fund stock by Revelation in the United States did not have any effect on the Central Fund offering because the only variable impacting the offering price was the cost of Central Fund acquiring gold and silver the morning of November 10, 2009.

This report has been prepared solely in connection with the above-referenced Litigation and is not intended for use or reliance in any other context.

OPINION

31. Based upon the above, it is my opinion that the exercise of jurisdiction over Defendants' participation in the Central Fund offering is not consistent with the factors considered by market participants in evaluating jurisdictional reach and choice of law.

July 20, 2015

Dennis Dumas

This report has been prepared solely in connection with the above-referenced Litigation and is not intended for use or reliance in any other context.