UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION

                  Plaintiff,

v.

REVELATION CAPITAL MANAGEMENT, LTD.,
and CHRISTOPHER P.C. KUCHANNY,

                  Defendants.

No. 14 Civ. 645 (VEC)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION TO STRIKE DEFENDANTS' EXPERT REPORT AND
<u>PRECLUDE THE EXPERT FROM TESTIFYING</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii
PRELIMINARY STATEMENT ............................................................................................... 1
ARGUMENT .............................................................................................................................. 3
I.  MR. DUMAS OFFERS PROPER EXPERT TESTIMONY REGARDING FACTUAL MATTERS CENTRAL TO THIS ACTION. .................................................. 3
II.  MR. DUMAS IS QUALIFIED TO RENDER HIS EXPERT OPINION .......................... 7
III.  MR. DUMAS'S EXPERT OPINION IS RELIABLE. ...................................................... 8
IV.  MR. DUMAS'S EXPERT OPINION IS ADMISSIBLE UNDER RULE 403. ............... 11
CONCLUSION ........................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Amorgianos v. Amtrak,*
    303 F.3d 256 (2d Cir. 2002) ........................................................................................ 3, 12

*Burkhart v. Washington Metro. Area Transit Auth.,*
    112 F.3d 1207 (D.C. Cir. 1997) .......................................................................................... 6

*Cary Oil Co. v. MG Ref. & Mktg.,*
    No. 99-cv-1725, 2003 U.S. Dist. LEXIS 6150 (S.D.N.Y. Apr. 11, 2003) ........................... 5, 9

*City of Pontiac Policeman's & Firemen's Ret. Sys. v. UBS AG,*
    752 F.3d 173 (2d Cir. 2014) ............................................................................................. 12

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993) ................................................................................................ 2, 3, 10

*Emig v. Electrolux Home Prods.,*
    No. 06-cv-4791, 2008 U.S. Dist. LEXIS 68811 (S.D.N.Y. Sept. 11, 2008) ........................... 13

*Highland Capital Mgmt., L.P. v. Schneider,*
    551 F. Supp. 2d 173 (S.D.N.Y. 2008) ........................................................................ 5, 8, 14

*Hygh v. Jacobs,*
    961 F.2d 359 (2d Cir. 1992) ............................................................................................... 6

*In re Initial Pub. Offering Sec. Lit.,*
    174 F. Supp. 2d 61 (S.D.N.Y. 2001) ................................................................................... 6

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.,*
    14 F. Supp. 2d 391 (S.D.N.Y. 1998) ................................................................................... 7

*Llerando-Phipps v. City of New York,*
    390 F. Supp. 2d 372 (S.D.N.Y. 2005) ................................................................................. 5

*Marx & Co. v. Diner's Club, Inc.,*
    550 F.2d 505 (2d Cir. 1977) ............................................................................................... 7

*McCullock v. H.B. Fuller Co.,*
    61 F.3d 1038 (2d Cir. 1995) ............................................................................................... 3

*Morrison v. Nat'l Austl. Bank Ltd.,*
    561 U.S. 247 (2010) ............................................................................................. 10, 11, 12

*Motown Prods. v. Cacomm, Inc.*,
  668 F. Supp. 285 (S.D.N.Y. 1987) ........................................................................................... 7

*Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*,
  988 F. Supp. 2d 395 (S.D.N.Y. 2013) ................................................................................... 13

*Roman v. Sprint Nextel Corp.*,
  No. 12-cv-276, 2014 U.S. Dist. LEXIS 138951 (S.D.N.Y. Sept. 29, 2014) ............................ 3

*SEC v. A Chi. Convention Ctr., LLC*,
  961 F. Supp. 2d 905 (N.D. Ill. 2013) ..................................................................................... 11

*SEC v. U.S. Envtl., Inc.*,
  No. 94-cv-6608, 2002 U.S. Dist. LEXIS 19701 (S.D.N.Y. Oct. 16, 2002) .............................. 8

*TC Sys. Inc. v. Town of Colonie, New York*,
  213 F. Supp. 2d 171 (N.D.N.Y. 2002) ..................................................................................... 8

*U.S. Info. Sys. v. IBEW Local Union No. 3*,
  313 F. Supp. 2d 213 (S.D.N.Y. 2004) ...................................................................................... 6

*United States v. Romano*,
  859 F. Supp. 2d 445 (E.D.N.Y. 2012) ................................................................................... 14

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991) ................................................................................................... 7

*United States v. Rosario*,
  No. 09-cr-415-2, 2014 U.S. Dist. LEXIS 160626 (S.D.N.Y. Nov. 14, 2014) .......................... 3

**RULES AND REGULATIONS**

17 C.F.R. 242.105 ............................................................................................................................ 2, 11

FED. R. EVID. 401 ................................................................................................................................ 7

FED. R. EVID. 403 .............................................................................................................................. 14

FED. R. EVID. 702 ................................................................................................................................ 3

Revelation Capital Management, Ltd. ("Revelation") and Christopher P.C. Kuchanny ("Kuchanny") (together, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiff's Motion to Strike Defendants' Expert Report and Preclude the Expert from Testifying (the "Motion").

## PRELIMINARY STATEMENT

Plaintiff seeks to exclude the testimony of Defendants' expert Dennis Dumas – who has been retained by Defendants to testify regarding securities industry custom and practice in connection with multinational securities transactions. Specifically, Mr. Dumas has opined regarding the factors considered by *market participants* – not Courts – in evaluating, from a business perspective, which country's regulations might apply to those multinational securities transactions.

Plaintiff's Motion rests on the erroneous assertion that Mr. Dumas's careful and deliberate expert opinion is nothing more than a legal conclusion. In fact, Plaintiff's assertion is a red herring. Plaintiff has decided the report makes a legal argument when nowhere does it do so. Instead, Mr. Dumas has opined regarding what a foreign entity doing business in the securities marketplace in 2009 would likely have understood with respect to the applicability of U.S. law based on the facts in this matter. He bases this opinion on over thirty years of business experience working in the securities industry on multinational transactions.

The meat of Plaintiff's red herring is the false argument that Mr. Dumas opines on *Morrison* or related case law. This is simply not the case. Nowhere is his report does Mr. Dumas opine as to the law this Court should apply when assessing the extraterritorial reach of

1

Rule 105 of Regulation M and the Court's subject matter jurisdiction over the instant dispute.[1] Even if the SEC's interpretation of *Morrison* is correct – which it is not – Mr. Dumas's opinion still satisfies the test for admissible testimony.  His opinion will assist the finder of fact in making determinations regarding the transactions at issue by providing background and context regarding similar international transactions.  Thus, Mr. Dumas's expert opinion provides a critical and unique perspective on the international transactions at issue in this action.  It will aid the fact finder in understanding what factors entities like Revelation may have considered at the time of purchasing securities in the Canadian Offering and what expectations it would have had regarding the implications of the purchase and the application of U.S. law.  It is therefore very relevant given the facts of this case – that the SEC is bringing an action against a Bermuda entity and a U.K. individual for participating in a Canadian offering – and Mr. Dumas is the only independent witness able to provide this testimony to the finder of fact.

Therefore, contrary to Plaintiff's assertion, Mr. Dumas's expert opinion satisfies all of the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and the Federal Rules of Evidence.  Mr. Dumas's testimony is based on his securities industry experience and is relevant to the issues to be considered by the finders of fact and the Court in this action; Mr. Dumas is qualified to render his expert opinion; and Mr. Dumas's expert opinion is reliable.  Plaintiff likewise fails to identify any confusion or prejudice that substantially outweighs the probative value of Mr. Dumas's expert opinion.  Accordingly, the Motion should be denied.

---

[1] Defendants note that Plaintiff also mischaracterizes the testimony of Defendants' other two experts, Gilbert Matthews and Edward Fleischman.  Contrary to Plaintiff's contention (Motion at 2), Defendants' experts have not opined that the November 2009 Central Fund offering was conducted on a best efforts basis.  Instead, Defendants' experts opined that the November 2009 Central Fund offering was an overnight marketed offering, which was not conducted on a firm commitment basis and therefore, *similar* to a best efforts offering, it is excepted from Rule 105.  *See* 17 C.F.R. 242.105(c).

**ARGUMENT**

Under Rule 702 of the Federal Rules of Evidence, there are three basic requirements for expert testimony to be admissible: (i) the expert must be qualified, (ii) the testimony offered must be reliable, and (iii) the testimony must be relevant. *See* FED. R. EVID. 702; *Daubert*, 509 U.S. at 588-95. The Rule 702 standard is not a rigid one and, in keeping with the thrust of the Federal Rules, it has been liberally applied by federal courts. *See United States v. Rosario*, No. 09-cr-415-2 (VEC), 2014 U.S. Dist. LEXIS 160626, *3 (S.D.N.Y. Nov. 14, 2014) (finding that the Supreme Court has rejected a "rigid" standard and that such a standard would be "inconsistent with the liberal thrust of the Federal Rules") (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995)); *see also Roman v. Sprint Nextel Corp.*, No. 12-cv-276 (VEC), 2014 U.S. Dist. LEXIS 138951, *9 (S.D.N.Y. Sept. 29, 2014) ("But, in accordance with the 'liberal admissibility standards of the federal rules,' only flaws in reasoning or methodology 'large enough that the expert lacks good grounds for his or her conclusions' warrant exclusion . . . .") (citing *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002)).

I.  **MR. DUMAS OFFERS PROPER EXPERT TESTIMONY REGARDING FACTUAL MATTERS CENTRAL TO THIS ACTION.**

Mr. Dumas does not impermissibly tender legal conclusions in his expert report, and he will not do so at trial. Instead, Mr. Dumas reviewed the evidence and testimony of this case, compared what occurred in the transaction at issue to what customarily occurs in the securities industry, and properly drew conclusions based on his experience in the securities industry. [2] *See* Deposition Transcript of Dennis Dumas ("Dumas Dep. Tr.") 42:3-14 ("I—I

---

[2] Contrary to the suggestion in Section III of Plaintiff's Motion, Mr. Dumas does not hold himself out to be an expert on foreign law and does not opine on that topic. Dumas's opinion is based on his expertise in the areas of multijurisdictional offerings and does not presume to offer anything other than an analysis of what a market participant would consider with regard to a multinational transaction. Plaintiff, however, admits in its Motion (*See* Motion at 9-10) that other foreign countries do not have a rule analogous to Rule 105. While not before the Court on the instant motion, this issue and its importance to matters of extraterritoriality and jurisdiction will be

believe an explanation of the custom and practice in the industry would assist the Court.  Q.  And you based that believe on what? . . . A.  Thirty years of involvement in international practice and structuring international organizations and seeing what the organizations do on both choice of law and jurisdictional questions in the context of trading and markets, underwriting, and other corporate finance and securities matters.").

In his expert report, Mr. Dumas stated that "[i]n evaluating jurisdictional reach and choice of law in multinational securities market fact patterns, practitioners in the field consider the location of the transaction in question and the conduct and effects of the relevant parties."  Dumas Report ¶ 29.  Mr. Dumas then compared the facts of this case to the factors that would be considered by *market participants* – not Courts - in industry practice, namely that both Revelation and Kuchanny were located in Bermuda, that Central Fund was located in Canada, that Central Fund hired CIBC, a Canadian bank, as underwriter, and that all of the agreements regarding the Central Fund offering were negotiated, and the closing took place, in Canada.  *See* Dumas Report ¶¶ 29-30.

This expert opinion is based on Mr. Dumas's knowledge of factors considered by individuals in the industry and is proper under the Federal Rules.  *See Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 379 (S.D.N.Y. 2005) (finding that the expert's statement that there "is no evidence to support [Plaintiff's] claims" was not a legal conclusion, but rather an opinion based on his experience); *Cary Oil Co. v. MG Ref. & Mktg*. No. 99-cv-1725, 2003 U.S. Dist. LEXIS 6150, *15-16 (S.D.N.Y. Apr. 11, 2003) (finding that if the expert couched his opinion specifically on the evidence reviewed and the work that he did, not how the verdict should read, his expert opinion would be permissible).  While experts cannot opine on ultimate

---

addressed in the context of summary judgment motions, and Defendants may offer evidence regarding the laws of Bermuda and Canada at such time.

factual or legal conclusions, experts can opine, as Mr. Dumas does here, on factors that would tend to make the facts considered in coming to such conclusions more or less true. *See Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 183 (S.D.N.Y. 2008) (finding that an expert could identify factors indicating that there was a binding agreement or a breach of an agreement, but could not opine that there was a binding agreement or a breach of an agreement); *U.S. Info. Sys. v. IBEW Local Union No. 3*, 313 F. Supp. 2d 213, 240-41 (S.D.N.Y. 2004) (finding that an expert could not opine that a defendant's conduct was "anticompetitive," but could point to factors that would tend to show anticompetitive behavior in the market).

Plaintiff acknowledges, as it must, that Mr. Dumas did not analyze the law in rendering his opinion. *See* Motion at 4. Instead, in recognition that that any legal decisions are made entirely by the Court, Mr. Dumas carefully and deliberately provided an expert opinion solely as to factors considered by market participants. *See* Dumas Dep. Tr. 38:5-13 ("Q . . . What I'm trying to understand, and I'm sure you can help me, Mr. Dumas, is are you suggesting that you're offering an opinion as to whether the Southern District of New York should exercise jurisdiction over these defendants in this particular case?  A.  It's an opinion on whether the factors relevant to this case are consistent with business practice. "). Mr. Dumas's expert opinions and the conclusions that he draws regarding the expectations of market participants are therefore distinguishable from those in the cases cited by Plaintiff in which an expert purported to opine on ultimate questions of law and fact. *See, e.g., Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (expert's testimony should have been excluded where expert provided definitions of "deadly force" and testified that conduct was not "justified under the circumstances"); *In re Initial Pub. Offering Sec. Lit.*, 174 F. Supp. 2d 61, 69 (S.D.N.Y. 2001) (finding experts' statements inadmissible where their opinion related to interpreting a statute); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (expert testimony

was inadmissible where it interpreted the Americans with Disabilities Act); *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) (expert testimony was inadmissible where it directly related to whether the defendant's 13D disclosures complied with legal requirements); *Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505, 508-10 (2d Cir. 1977) (finding expert testimony inadmissible where it amounted to an opinion on the legal standards to be derived from a contract and which would have governed defendant's actions); *Motown Prods. v. Cacomm, Inc.*, 668 F. Supp. 285, 288 (S.D.N.Y. 1987) (refusing to consider an affidavit of a lawyer stating that the title of television show was "suggestive" rather than "descriptive" under the Lanham Act); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*, 14 F. Supp. 2d 391, 398 (S.D.N.Y. 1998) (finding an expert opinion to be the functional equivalent of an opinion that an individual did not act with malice, and therefore inadmissible).

Moreover, Mr. Dumas's proffered testimony is relevant. As with any evidence, an expert's opinion must have the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Mr. Dumas's opinion does just that. Mr. Dumas has provided context for certain concepts from a business perspective relating to the offering from the standpoint of a reasonable actor in the securities industry and will assist the jury in understanding the context in which Revelation's participation in the Offering took place.

Industry custom and practice in the securities industry is regularly admitted into evidence as both relevant and helpful. *See e.g., Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 182 (S.D.N.Y. 2008) (finding that an expert could testify as to the customs and practices of the industry and that it is "relevant to this case and may prove helpful to the jury."); *SEC v. U.S. Envtl., Inc.*, No. 94-cv-6608, 2002 U.S. Dist. LEXIS 19701, *7-20 (S.D.N.Y. Oct. 16, 2002) (stating that "[i]n securities cases, federal courts have admitted expert testimony to

assist the trier of fact in understanding trading patterns, securities industry regulations and complicated terms and concepts inherent in the practice of the securities industry" and finding testimony admissible where the expert had over thirty years of experience in the industry). Moreover, here, Mr. Dumas's expert opinion is relevant to the extent intent may be a factor. Thus, Mr. Dumas's expert opinion on the practices of market participants in multinational securities transactions is relevant to the securities transaction at issue in this action.

## II. MR. DUMAS IS QUALIFIED TO RENDER HIS EXPERT OPINION

Mr. Dumas is qualified to opine on securities industry custom and practice. Notwithstanding Plaintiff's assertion that Mr. Dumas is only qualified to testify as a lawyer (Motion at 3), Mr. Dumas has significant experience as a securities industry participant. In assessing whether an expert witness is qualified, trial courts "must first ascertain whether the proffered expert has the educational background or training in a relevant field." *Cary Oil Co. v. MG Ref. & Mktg.*, No. 99-cv-1725, 2003 U.S. Dist. LEXIS 6150, *4 (S.D.N.Y. Apr. 11, 2003) (quoting *TC Sys. Inc. v. Town of Colonie, New York*, 213 F. Supp. 2d 171, 174 (N.D.N.Y. 2002)). The expert should be permitted to testify if the expert's area of expertise enables the expert to give an opinion that is capable of assisting the trier of fact. *See id.* at *4-5.

While Mr. Dumas has substantial experience as a lawyer assisting clients in structuring securities deals and complying with securities regulation (Dumas Dep. Tr. 15:7-17; Dumas Dep. Tr. 19:10-22), that is not his only securities industry experience. Much of Mr. Dumas's experience was obtained while working for banking and brokerage organizations and while working on business issues and transactions. Dumas Report ¶ 6; *see also* Dumas Dep. Tr. 9:22-10:12 ("Q. Okay. Has your work – and we'll get into this in more detail. Over the course of your career have you functioned as a lawyer or in some other capacity? A. Both. Q. Okay. What – what—and how so? A. Well, it – when I was in-house counsel at the Bank of New York,

basically the in-house position was a mixed legal operational position and so there was a great deal of working shoulder to shoulder with the business people on things like sitting at the trading desk, participation in underwritings, and things of that nature."). This business experience extends to structuring bank and affiliate relationships, structuring international underwriting relationships, structuring dual offerings in multiple jurisdictions, and working with companies to develop matrixes used for international operations. Dumas Dep. Tr. 81:23-82:8.

Most notably, Mr. Dumas worked for seven years at the Bank of New York ("BNY") and advised BNY extensively on trading desk issues and participation in underwritings in a dual legal and business role. Dumas Dep. Tr. 10:3-12. Mr. Dumas was also responsible for starting the underwriting and broker-dealer divisions at BNY. Dumas Dep. Tr. 19:5-9, 21:13-22:6. As BNY is a multinational organization and one of the largest clearing and custodian banks worldwide, Mr. Dumas obtained a great deal of international transactional experience through his position. Dumas Dep. Tr. 22:7-18. Mr. Dumas has also sat on the Security Industry Association committee for underwriting, and since 2010, Mr. Dumas has maintained the position of president and general counsel at Avila Capital Markets, Inc., a broker dealer. Dumas Dep. Tr. 10:15-21, 56:2-9; Dumas Report ¶ 6. In total, Dumas has over thirty years of experience structuring international transactions (Dumas Dep. Tr. 66:14-19), and Mr. Dumas is qualified to opine on the securities industry and the customs and practices of companies participating in international transactions.

### III. MR. DUMAS'S EXPERT OPINION IS RELIABLE.

After finding that an expert is qualified, a trial court must then decide if a qualified expert's testimony rests on a reliable foundation. *See Daubert*, 509 U.S. at 590. Here, through his extensive work in the securities industry, Mr. Dumas obtained relevant knowledge of

the structuring of business transactions and the factors considered by market participants that makes his opinion regarding the securities industry reliable.

Plaintiffs' reliance on the Supreme Court's decision in *Morrison v. National Australia Bank Limited*, 561 U.S. 247 (2010), for the proposition that Mr. Dumas's opinion is not reliable (*see* Motion at 8-9) is without merit. Plaintiff claims that, under *Morrison*, a court is no longer required to consider factors relevant to the conduct and effects of a securities transaction in assessing extraterritoriality and that the fact that short sale transactions occurred in the United States is sufficient to confer jurisdiction in the United States over a participant in a subsequent foreign offering. *Id.* As a threshold matter, Mr. Dumas does not offer an opinion on the law regarding the extraterritorial application of Rule 105 of Regulation M (*see supra* at § I).

Moreover, while the application and scope of *Morrison* are not before the Court at this time and will be fully briefed by Defendants in connection with summary judgment, Defendants note that Plaintiff's argument misconstrues the state of the law in two material respects. First, the effect of the Dodd-Frank Wall Street Reform Act and Consumer Protection Act ("Dodd-Frank") on the test for extraterritoriality under *Morrison* and Dodd-Frank's possible retroactivity regarding the conduct and effects test remain unsettled. *See*, *e.g.*, *SEC v. A Chi. Convention Ctr., LLC*, 961 F. Supp. 2d 905, 910 n.1 (N.D. Ill. 2013). Second, even if the test articulated in *Morrison* and its progeny applies, Defendants note that Plaintiff misapplies the *Morrison* test here. As will be briefed by Defendants in further detail in their motion for summary judgment, the conduct prohibited by Rule 105 is participation in an offering -- not selling shares short. *See* 17 C.F.R. 242.105. Thus, the facts relevant for the analysis under *Morrison* as to the extraterritorial application of Rule 105 over Defendants are the facts relating to the participation in a Canadian offering of a Canadian closed-end fund's treasury shares by a Bermuda investment vehicle. *See, e.g., City of Pontiac Policeman's & Firemen's Ret. Sys. v.*

*UBS AG*, 752 F.3d 173, 179-81 (2d Cir. 2014) ("In sum, *Morrison* does not support the application of § 10(b) of the Exchange Act to claims by foreign purchaser of foreign-issued shares on a foreign exchange simply because those shares are also listed on a domestic exchange."). These facts were expressly considered by Mr. Dumas in rendering his expert opinion that the exercise of jurisdiction over Defendants would not be consistent with the factors considered by market participants, and *Morrison* therefore does not make Mr. Dumas's opinion unreliable.

Finally, the fact that Mr. Dumas's opinion is based on his experience rather than citations to secondary sources does not make his expert opinion unreliable. As discussed in *Amorgianos*, a case relied upon by Plaintiff, an expert's testimony is not rendered unreliable merely because the expert does not back his or her opinion with "published studies that unequivocally support his or her conclusions." *Id.*, 303 F.3d at 266. Here, with regard to the factors reviewed by companies in assessing which laws apply to multinational arrangement, Mr. Dumas specifically testified that, in his experience, companies use a matrix to identify, among other things, where the entities that are involved are incorporated and located. *See* Dumas Dep. Tr. 57:1-15. Companies then use this matrix to ensure their compliance with the applicable law. *See* Dumas Dep. Tr. 57:21-58:1. In rendering his opinion that the exercise of jurisdiction is not consistent with the factors considered by market participants (Dumas Report ¶ 31), Mr. Dumas relies on the same factors considered in this matrix by market participants. Dumas Dep. Tr. 56:10-59:14. And Plaintiff does not – and cannot – claim that Mr. Dumas's application of these factors in the instant action was not reliably tied to the facts of this case.

In fact, Mr. Dumas's expert testimony is consistent with that of the fact witnesses in this case. Revelation's principal testified:

-10-

> But what I can tell you with certainty, of when this [Action] first came up, is one of the factors that shocked me was that it was a Canadian fund, and buying shares in a Canadian fund, I wouldn't have expected to trigger a U.S. regulatory consequence in the first instance.

Deposition Transcript of Christopher Kuchanny 74: 12-18 (Exhibit 7 of the Yoskowitz Declaration in Support of Defendants' Motion to Preclude Testimony of Plaintiff's Expert Witness Guy Erb, dated September 9, 2015 (ECF No. 44) ("Yosk. Decl.")).

> And Stefan Spicer, the CEO of Central Fund of Canada, testified:
>
> Q. In your view, Mr. Spicer, was the November 2009 offering one that was made in the United States as well as Canada?
>
> A. My understanding is that that offering was conducted by a Canadian company with a Canadian agent who became its Canadian underwriter, and we did not have any U.S. underwriters involved. So, although sales may have occurred in the – into the United States by that agent, who became the underwriter, we did not engage any U.S. parties directly to offer those securities.

Deposition Transcript of Stefan Spicer 159:10-20 (Yosk. Decl. Ex. 9).

Moreover, Mr. Dumas's opinion is based on his years of experience, and is therefore admissible. *See Emig v. Electrolux Home Prods.*, No. 06-cv-4791, 2008 U.S. Dist. LEXIS 68811, *30-31 (S.D.N.Y. Sept. 11, 2008) (finding an expert opinion to be reliable where it was based on extensive experience); *see also Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 404-05 (S.D.N.Y. 2013) (finding an expert's testimony on custom and practice to be reliable when he had worked in the industry for more than eighteen years); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 182 (S.D.N.Y. 2008) (finding an expert's opinion admissible where it was "based on sufficient facts, reliable principles, and reliable application of the principles to the facts").

## IV.   MR. DUMAS'S EXPERT OPINION IS ADMISSIBLE UNDER RULE 403.

Plaintiff has failed to demonstrate that the probative value of Mr. Dumas's opinion – established by Defendants above – is substantially outweighed by any prejudice, confusion or waste of time. As discussed above, Mr. Dumas does not provide a legal opinion,

and instead provides insight on the factors that industry actors would consider when participating in multinational transactions. This probative opinion stems from Mr. Dumas's extensive business experience structuring bank and affiliate relationships, structuring international underwriting relationships, and structuring dual offerings in multiple jurisdictions. Thus, his expert opinion is admissible pursuant to Rule 403. *See* FED. R. EVID. 403; *see also U.S. v. Romano*, 859 F. Supp. 2d 445, 467 (E.D.N.Y. 2012) (finding testimony to be admissible where it was highly probative and not unduly prejudicial).

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiff's motion to strike Mr. Dumas's expert report and preclude Mr. Dumas from testifying, as:

- Mr. Dumas offers relevant and proper expert testimony regarding what a reasonable business person in the securities market would consider when entering into an international transaction and their expectations in terms of the applicability of U.S. laws.

- Mr. Dumas is qualified to provide this expert opinion, as he has over thirty years of experience working on international transactions in a business capacity.

- Mr. Dumas's testimony is reliable, as it is consistent with the testimony of fact witnesses and evidence. Plaintiff's *Morrison* related arguments are incorrect, as Mr. Dumas does not opine on *Morrison*, nor does *Morrison* preclude his testimony.

- Mr. Dumas's insight is critical, as he is the only independent witness able to expand the fact finder's understanding of a business person's expectations and actions when participating in multijurisdictional transactions.  This is especially relevant here, as the purchaser, issuer, and underwriter were all located outside of the U.S.

New York, New York
October 7, 2015

                        Respectfully submitted,

                        SEWARD & KISSEL LLP

                        By: /s/ Jack Yoskowitz_____
                              Jack Yoskowitz (JY-3935)
                              Thomas Ross Hooper (TH-4554)
                              One Battery Park Plaza
                              New York, New York 10004

                              Tel.:  (212) 574-1200
                              Fax:  (212) 480-8421

                         ATTORNEYS FOR CHRISTOPHER P.C. KUCHANNY
                         AND REVELATION CAPITAL MANAGEMENT, LTD.

SK 28185 0001 6779856