UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br>         **Plaintiff,** <br><br>    v. <br><br> REVELATION CAPITAL MANAGEMENT LTD. and CHRISTOPHER P.C. KUCHANNY, <br><br>   **Defendants.** | Case No. <br><br> 14 Civ. 0645 (VEC) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT**


Charles D. Stodghill (pro hac vice)
Lauren B. Poper
Division of Enforcement
Securities and Exchange Commission
100 F Street, NE
Washington, DC  20549
(202) 551-4413 (Telephone)
(202) 772-9246 (Facsimile)
E-Mail: stodghillc@sec.gov

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………..ii

INTRODUCTION…………………………………………………………………………..1

FACTUAL BACKGROUND…………………………………………..........................3

STANDARD OF REVIEW…………………………………………….........................6

ARGUMENT………………………………………………………………………….…..8

    I.      MR. ERB IS WELL QUALIFIED TO OFFER HIS OPINION THAT THE
           OFFERING WAS UNDERWRITTEN AS A FIRM COMMITMENT………………8

    II.     THE ERB OPINION IS RELIABLE…………………………………………………...10

    III.    MR. ERB'S TESTIMONY IS NOT BARRED BY FED. R. EVID.
           403…………………………………………………………………………………14

CONCLUSION……………………………………………………………………………..15

## TABLE OF AUTHORITIES

<u>**Cases:**</u>

*Arista Records, LLC v. Lime Group, LLC,*

>   No. 06 Civ. 5936, 2011 WL 1674796 (S.D.N.Y. May 2, 2011)…………………………6, 10

*Boucher v. U. S. Suzuki Motor Corp.,*

>   73 F.3d 18, 21 (2d Cir. 1996)…………………………………………………………...6

*Bourjaily v. United States,*

>   483 U.S. 171 (1987)………………………………………………………………………7

*Boykin v. Western Express, Inc.,*

>   No. 12 Civ. 7428, 2015 WL 539423 (S.D.N.Y. Feb. 6, 2015)…………………………..14

*Cary Oil Co., Inc., v. MG Refining & Marketing, Inc.,*

>   No. 99 Civ. 1725, 2003 WL 1878246(S.D.N.Y. April 11, 2003)…………........................8

*Daubert v. Merrell Dow Pharmaceutical,*

>   509 U.S. 579(1993)...……………………………………………….......................7-8, 10

*In re Pfizer, Inc. Securities Litigation,*

>   No. 04 Civ. 9866, 2010 WL 1047618 (S.D.N.Y. March 29, 2010)………………………7

*In re Zyprexa Products Liability Litigation,*

>   489 F.Supp.2d 230 (E.D.N.Y. 2007)…………………………………….......................8

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corporation,*

>   No. 04 Civ. 7369, 2006 WL 2128785(S.D.N.Y. July 28, 2006)…………………………8

*Kumho Tire Co., Ltd v. Carmichael,*

>   526 U.S. 137(1999) …………………………...…………………………………………7

*Micro Chemicals, Inc.v. Lextron, Inc.*,

    317 F.3d 1387(Fed. Cir. 2003).................................................................................2-3

*McCullock v. H.B. Fuller Company*,

    61 F.3d 1038(2d Cir. 1995)……………………….……………........................10

*Nimely v. City of New York*,

    414 F.3d 381(2d Cir. 2005)………………………...…………………………...7

*R.F.M.A.S., Inc. v. So,*

    748 F.Supp.2d 244(S.D.N.Y. 2010)…………………………………………10, 13

*Stroheim & Romann, Inc. v. Allianz Insurance Company*,

    No. 01 Civ. 8236, 2003 WL 21980389 (S.D.N.Y. Aug. 14, 2003)….……........................6

*Sullivan v. Ford Motor Company*,

    No. 97 Civ. 593, 2000 WL 343777 (S.D.N.Y. March 31, 2000)………………………8-9

*U. S. Bank Nat'l Assoc. v. PHL Variable Life Ins. Co.*,

    No. 12 Civ. 6811, 2015 WL 3932791 (S.D.N.Y. June 22, 2015)………………………..14

*United States v. Brown*,

    776 F.2d 397 (2d Cir. 1985)………………………………………………………….8

*United States v. Joseph*,

    542 F.3d 13(2d Cir. 2008)………………………………………………………..10

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,

    571 F.3d 206 (2d Cir.2009)………………………………………………………10

**<u>Regulations:</u>**

17 C.F.R. § 242.105……………………………………………………………………………1, 3

17 C.F.R. § 242.105 (c)…………………………………………………………………….4

**<u>Rules:</u>**

Fed. R. Evid. 403……………………………………………………….........................1

Fed. R. Evid. 702……………………………………………………….........................1, 6-7

Fed. R. Evid. 702 Advisory Committee Notes………………………………………………..10

**<u>Other Authorities:</u>**

*Short Selling in Connection with a Public Offering, Exchange Act Release No. 56206*
(August 6, 2007)…………………………………………………………………..3

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE<br>COMMISSION,<br><br>    **Plaintiff,**<br><br>    v.<br><br>**REVELATION CAPITAL<br>MANAGEMENT LTD. and<br>CHRISTOPHER P.C. KUCHANNY,**<br><br>    **Defendants.** | 14 Civ. 0645 (VEC) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT**

Plaintiff, the Securities and Exchange Commission ("SEC"), respectfully submits

this memorandum in opposition to the motion of Defendants, Revelation Capital

Management, Ltd. ("Revelation") and Christopher P.C. Kuchanny ("Kuchanny")

(collectively "Defendants"), pursuant to Fed. R. Evid. 403 and 702, to exclude the

proposed testimony of the SEC's proffered expert, Guy F. Erb ("Erb").[1]

A central issue in this case relates to the meaning of the term "firm commitment"

in the context of securities underwriting and, in particular, under Rule 105 of SEC

Regulation M [17 C.F.R. §242.105]. Accordingly, it cannot be denied that expert

testimony on the securities industry's understanding of that term is relevant to this issue.

Mr. Erb, a securities industry expert, opines as to the industry's understanding of the term

"firm commitment" (a commitment in which the underwriters of an offering assume the

risk of the sale of the securities to the market) and his opinion that the transaction at issue

---

[1]    A copy of Mr. Erb's Expert Report ("Erb Report") is attached hereto as Exhibit 1.

constitutes such a firm commitment.  Mr. Erb is qualified to provide this opinion and his comprehensive report provides more than sufficient data and information to support his opinions.

Defendants nevertheless challenge the admissibility of Mr. Erb's testimony on a number of grounds.  First, they argue that Mr. Erb, who has extensive experience in international finance, including the underwriting of a variety of securities, with more than twelve years working as a registered industry representative and ten years' experience at a major investment bank, lacks the requisite experience to provide an opinion as to how the transaction that underlies the Commission's claim in this matter should be characterized.  This assertion is simply incorrect.

Second, Defendants incorrectly contend that Mr. Erb's opinions should be precluded as unreliable, because: (1) his analysis purportedly fails to take into account certain facts and testimony of witnesses involved in the transaction and certain legal principles and rules they contend are applicable, and (2) because Defendants apparently disagree with the conclusions Mr. Erb reaches from his analysis of the relevant documents and testimony.  At best, Defendants arguments that Mr. Erb's opinions are "unreliable" simply establish that there is a dispute about the facts and the interpretations of various documents and testimony in this case that is rightly left for resolution by the finder of fact. Mr. Erb's opinions and proffered testimony are not unreliable simply because Defendants do not like his opinions and they have a different view of what the proof in this case will be.  *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed.Cir.2003) ("[W]hen, as here, the parties' experts rely on conflicting sets of facts, it is

not the role of the trial court to evaluate the correctness of facts underlying one expert's

testimony").

Finally, Defendants argue that Mr. Erb's testimony should be disallowed under

Fed. R. Evid. 403 because the admission would be more prejudicial than probative.  The

Court should reject this argument as well.  Accordingly, for the reasons stated below,

Defendants' motion must be denied.

## FACTUAL BACKGROUND

The sole claim in this matter alleges that  Revelation, and its founder and sole

shareholder, Mr. Kuchanny, unlawfully participated in a follow-on offering of the

securities of Central Fund of Canada Limited ("Central Fund"), after engaging in short

sales of those same securities in violation of Rule 105 of the SEC's Regulation M [17

C.F.R. §242.105].  Rule 105 prohibits any person who makes a short sale of securities

during a defined restricted period prior to the pricing of offerings from purchasing the

same securities in such an offering.  The Rule is designed to prevent potentially

manipulative short selling just prior to the pricing of follow-on or secondary offerings,

thereby facilitating offering prices to be determined by independent market forces.  *Short

Selling in Connection with a Public Offering, Exchange Act Release No. 56206* (August

6, 2007).  Rule 105 is prophylactic and prohibits such conduct regardless of the seller's

intent. *Id*.

Central Fund is a closed-end fund incorporated and based in Canada.  Complaint,

¶ 12 (Dkt. No. 2).  It invests primarily in long-term holdings of gold and silver bullion.

*Id*.  Central Fund is listed on the New York Stock Exchange under the symbol CEF and

on the Toronto Stock Exchange under the symbols CEF/A and CEF/U.  *Id*. The trading at

issue here relates to a follow-on offering by Central Fund on November 10, 2009 (the

"Offering").  The Commission's Complaint alleges that Defendants' sold short Central

Fund securities during the restricted period, which the Complaint alleges was five

business days prior to the pricing of the Offering shares. Complaint, ¶¶ 14, 17 (Dkt. No.

2).  By shorting the Central Fund securities and later purchasing Offering shares of the

same securities at lower prices, the Complaint alleges that Defendants illicitly profited by

more than $1.3 million.  *Id*. at ¶ 18.

By its express terms, Rule 105 only applies to offerings conducted on a "firm

commitment" basis. 17 C.F.R. §242.105(c).  Defendants contend their trading activity

was permissible because the Offering was conducted on a "best efforts" basis, and thus

was beyond the reach of Rule 105.   Answer, ¶ 16 (Dkt. No. 17).   Thus, a central issue to

be resolved in this case is whether the Offering should be characterized as having been

conducted on a "firm commitment" or some other basis.[2] Given that Rule 105 does not

expressly define what constitutes a firm commitment underwriting, the meaning of that

term as understood by participants in the securities industry is particularly relevant to the

resolution of the SEC's claim.

To assist the fact finder in resolving this question, the SEC proposes to offer the

testimony of Mr. Erb, an expert with over 25 years of experience in international finance.

His work history includes more than 12 years at a broker-dealer registered with the

National Association of Securities Dealers ("NASD") and a major investment bank,

---

[2]     Defendants further contend that all the relevant conduct took place outside the United States and therefore U.S. securities laws are inapplicable.  Answer, ¶ 2 (Dkt. No. 17).  This is not the case.  Although other jurisdictions may have some relationship as to the transactions in this case, the SEC asserts that since Defendants' conduct involved securities markets in the United States (a fact Defendants conveniently do not discuss) this Court has jurisdiction over the transactions at issue.  More importantly, Mr. Erb offers no opinion on this issue.  Accordingly, those facts are largely irrelevant to resolution of Defendants' current motion to exclude.

Goldman Sachs.  Erb Report at ¶¶ 6-12, A-1 to A-6.  He has worked on the underwriting

and subsequent trading of a number of equity and debt securities, mergers and

acquisitions, and private equity transactions. *Id.* at ¶ 6.

Specifically with respect to securities underwriting, his experience includes due

diligence performed by investment banks prior to debt and equity offerings, presentations

on behalf of issuers to investors regarding actual or potential offerings, review of offering

documents, and the pricing of securities to be included in underwritten offerings.  Erb

Report at ¶¶ 6, 9-10, App. 1. He has been qualified by securities industry regulatory

bodies as a general securities representative (Series 7) and general securities principal

(Series 24), after receiving training and sitting for an examination prior to each

qualification.  *Id.* at ¶ 10.  In addition, Mr. Erb served for three years as an adjunct

member of the graduate faculty of the State University of New York, where he analyzed

and lectured on securities underwriting and other international financial issues.  *Id*. at ¶

12.

Mr. Erb holds undergraduate and graduate degrees in economics from the

University of California, Berkeley and the London School of Economics and Political

Science. *Id.* at ¶ 14.  Since 2005, he has provided expert consulting services on numerous

matters within the scope of his considerable experience and expertise.  *Id.* at ¶¶ 6-7, 11.

In preparing his Report, Mr. Erb and/or members of his staff under his direction

considered and analyzed a substantial amount of material, including, but not limited to,

the relevant pleadings, the deposition testimony of all the fact witnesses, various

deposition exhibits, a compilation of all the transaction documents relating to the

Offering (described in his Report as the "Deal Documents"), applicable rules and

regulations promulgated by the Commission, various documents relating to the Offering

that Central Fund filed with the Commission, as well as industry publications and similar

materials available on internet websites.  Erb Report, App. 3.

Mr. Erb's principal opinion in this matter is that "the underwriting of the Offering

was in all respects a firm commitment underwriting."  *Id.* at ¶ 18.  His opinion is based

upon his investment banking experience with securities underwriting, his training in and

knowledge of the standards and practices of the industry, his understanding of the

regulatory framework for the Offering, the plain language of the Offering documents and

his review of the material produced in this matter.  *Id*.  Mr. Erb's Report goes on to state

that, while the underwriters and Central Fund set the price of the Offering shares based

on the net asset value per share ("NAV") that was calculated from the prices at which the

Central Fund purchased gold and silver bullion on November 10, 2009, rather than the

market prices of existing shares, "[t]hat fact had no bearing on my opinion that the

Offering was underwritten on a firm commitment basis."  *Id.* at ¶ 19.  As demonstrated

below, Mr. Erb's opinion fully satisfies the admissibility requirements under Fed. R.Evid.

702 and 403.

### STANDARD OF REVIEW

It is well-settled that trial judges have broad discretion to determine the

admissibility of expert testimony**.**  *Boucher v. U. S. Suzuki Motor Corp.*, 73 F.3d 18, 21

(2d Cir. 1996); *see also Arista Records, LLC v. Lime Group, LLC*, No. 06 Civ 5936, 2011

WL 1674796, at *1 (S.D.N.Y. May 2, 2011); *Stroheim & Romann, Inc .v. Allianz Ins.*

*Co.*, No. 01 Civ. 8236, 2003 WL 21980389, at *2 (S.D.N.Y. August 14, 2003) (*citing*

*Zuchowitz v. United States*, 140 F.3d 381, 386 (2d Cir. 1998).    The testimony of a

qualified expert is admitted when it "will [assist] the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  The proponent of the testimony has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.  *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

In making an admissibility determination regarding expert testimony, a court must focus on three issues: (1) whether the witness is qualified; (2) whether the proffered opinion is based on reliable data and methodology; and (3) whether the expert's opinion on a particular issue will assist the trier of fact.[3]  *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993)  ("[U]nder the Rules the trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable.");  *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005).  S*ee also Kumho Tire Co., Ltd v. Carmichael,* 526 U.S. 137, 141 (1999) (extending the trial judge's general "gatekeeping" obligation established by *Daubert* to all testimony based on technical and other specialized knowledge.).

Expert testimony also is subject to Rule 403, and may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  *Daubert,* 509 U.S. at 595.

When assessing admissibility, however, courts do not want to "prejudge the weight of conflicting evidence or substitute the judgment of the court for that of the jury." *In re Pfizer, Inc. Securities Litig.*, No. 04 Civ. 9866, 2010 WL 1047618 (S.D.N.Y. March 29, 2010) (*citing In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1133 (2d Cir.

---

[3]    Defendants cannot and do not challenge the relevance of Mr. Erb's opinion to the central issue presented by the Complaint – whether the Offering was conducted on a firm commitment basis.

1995). Rather, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible [expert opinion]." *Daubert*, 509 U.S. at 596.

## ARGUMENT

### I.    MR. ERB IS WELL QUALIFIED TO OFFER HIS OPINION THAT THE OFFERING WAS UNDERWRITTEN AS A FIRM COMMITMENT.

Fed. R. Evid. 702 explicitly provides that a witness may offer opinion testimony "if qualified by knowledge, skill, experience, training, or education."  "Courts within this Circuit have liberally construed expert qualification requirements when determining if a witness can be considered an expert." *Cary Oil Co., Inc., v. MG Refining Marketing, Inc.*, No. 99 Civ. 1725, 2003 WL 1878246, at*2 (S.D.N.Y. April 11, 2003) (*quoting TC Sys., Inc. v. Town of Colonie*, 213 F. Supp.2d 171, 174, (N.D.N.Y.2002).  *See also United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985) (qualification requirements of Rule 702 "must be read in light of the liberalizing purpose of the Rule").

Thus, experts are not required to satisfy an overly narrow test of his or her qualifications.  *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04 Civ. 7369,  2006 WL 2128785 at *5 (S.D.N.Y. July 28, 2006).  Rather, "[i]f the expert has educational and experiential qualifications in a given field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *In re Zyprexa Prods. Liab. Litig.*, 489 F.Supp.2d 230, 282 ( E.D.N.Y. 2007) (*citing Stagl v. Delta Airlines, Inc.*, 117 F.3d 76, 80 (2d Cir. 1997). *See also Sullivan v. Ford Motor Co.*, No. 97 Civ. 593, 2000 WL 343777, at *4 (S.D.N.Y. March 31, 2000) ("One knowledgeable

about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion.") (internal citation omitted).

Judged by these standards of admissibility, Mr. Erb is more than qualified to offer the opinion that the Offering was a "firm commitment" underwriting as understood in the securities industry.  Here, Mr. Erb's experience is directly related to the major issue in this case.  Among other things, Mr. Erb has more than a dozen years of experience working in the securities industry, including nearly ten years at a major investment bank, Goldman Sachs, both in New York and Mexico.

As a vice president of Goldman and later as chief operating officer of Goldman's Mexican affiliate, Mr. Erb was responsible for investment banking services in Mexico. In that capacity, he was involved in the underwriting of at least ten major equity offerings, at least five of which were realized involving billions of capital for a number of companies. Erb Dep. Tr. 12:22-15:21.[4]   He was a member of the investment banking team that led the initial public offering ("IPO") of TELMEX, the Mexican national telephone company, on the New York Stock Exchange. Erb. Dep. Tr.  15:21-17:3, 19:19-20:19. The TELMEX IPO was an international offering with shares placed in international markets, including Canada.  In addition, at Goldman, he worked on teams involved in the underwriting of international debt offerings.  He has been licensed as a securities professional and lectured on securities issues while an adjunct member of a graduate school faculty.  He has testified as an expert on a number of occasions and prepared a number of expert reports on issues relating to securities underwriting.

Faced with evidence of Mr. Erb's substantial securities industry experience, and securities underwriting in particular, Defendants nevertheless argue that he is unqualified

---

[4]     A copy of the Transcript of Mr. Erb's Deposition is attached as Exhibit 2 hereto.

to offer an opinion regarding the characterization of the Offering because he (1) has no experience with offerings that were conducted on something other than a firm commitment basis, (2) has not opined on the mechanics of underwriting securities, and (3) has no specialized training specifically in underwriting. Def. Mem. at pp 12-13. These arguments ignore Mr. Erb's highly relevant industry experience and seem to suggest that no one other than an underwriter is capable of assessing whether an offer is a firm commitment. That is simply not the case. Moreover, such quibbles with Mr. Erb's academic training or specialized experience go to the testimony's weight not its admissibility and can be a subject of cross-examination. *See United States v. Joseph*, 542 F.3d 13, 21-22 (2d Cir. 2008); *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir. 1995); *Arista,* 2011 WL 1674796, at *1.

## II.     THE ERB OPINION IS RELIABLE.

In determining admissibility, courts "start with the presumption that expert evidence is reliable." *Arista,* 2011 WL 1674796, at *3 (*quoting UMG Recordings, Inc. v. Linder*, 531 F.Supp.2d 453, 456 (E.D.N.Y. 2007). *See also* Fed. R. Evid. 702, Advisory Committee Note ("A review of the cases after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."). Unless an expert relies on assumptions or information that are "so unrealistic or contradictory as to suggest bad faith, inaccuracies in the underlying assumptions or facts do not generally render an expert's opinion inadmissible." *R.F.M.A.S., Inc. v. So,* 748 F.Supp.2d 244, 269 (S.D.N.Y. 2010). Other, less significant, suggestions that an expert's assumptions are unfounded or his facts are inaccurate go to the weight to be given the testimony. *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC,* 571 F.3d 206, 214 (2d Cir.2009).

Mr. Erb's basic conclusion is that the Offering was underwritten on a firm commitment basis.  As described in his Report, in a firm commitment securities underwriting, the underwriters purchase the entire stock issue outright from the issuer and the underwriters, not the issuer, bear the principal risk of selling all the issued shares at the offering price.  Erb Report at ¶¶ 30-32.  Mr. Erb explains that there are two types of firm commitment underwritings:  one in which the price is set before the underwriters go to market with the transaction[5] and the other in which the deal is "pre-marketed" before the underwriters purchase the shares.  *Id.*  In "pre-marketed" offerings, the underwriters attempt to build a book of orders for offered shares by soliciting investor indications of at 41-44interest in purchasing shares within an indicated price range.  *Id*.  Once the deal is priced, the underwriter executes the trade.  *Id.*  However, the underwriters remain at risk until the transaction closes.  Thus the only distinguishing feature between the two types of firm commitment offerings is the timing of the underwriters actual purchase of the shares, not whether they will do so.  *Id.*

By contrast, a best efforts offering is, in substance, a placement agreement between an issuer and a broker-dealer who acts as a selling agent for the offered shares. *Id*. at ¶¶ 30-31.  While there are several types of best efforts offerings, none of the selling agents involved in such offerings bear any responsibility for unsold shares.  *Id.* at ¶ 30.

In his Report, Mr. Erb responds to Defendants' suggestion that the Offering was not a firm commitment underwriting by explaining that Defendants' argument confuses offerings conducted on a best efforts basis "with the common investment bank practice of building a book of potential investors' indications of interest in purchasing shares.  Book

---

[5]       This type of transaction was sometimes referred to as a "bought deal" by Canadian witnesses. See, e.g., Scott Dep. Tr. 24:6-26:8.

11

building does not entail the purchase of shares (Erb Report at ¶ 70) since it is simply one step in the underwriting process that leads to a firm commitment offering.

Defendants contend that Mr. Erb's Report and testimony must be precluded as unreliable because: (1) it is based almost entirely on his experience and he fails to explain how his experience enabled him to reach his conclusions; (2) his analysis fails to consider relevant facts and testimony of witnesses, and (3) citations to authoritative and factual materials in his Report do not support his opinion.[6]  All of these contentions are unfounded.

Defendants' contention that Mr. Erb's opinion is unreliable because he "consistently fails to sufficiently explain what experiences [he has] that would lead him to opine that the Offering was a firm commitment one" (Def. Mem. p 15) is particularly misplaced. As discussed above, Mr. Erb has considerable underwriting experience obtained during more than a dozen years of actual work in the securities industry and two years of teaching securities underwriting, among other things, to graduate students. Erb Report at ¶¶ 6-13 and A-1 to A- 6.

More significantly, however, his Report demonstrates that he is not relying merely on that considerable practical experience. Rather, he supplemented his actual

---

[6]     Defendants also argue that Mr. Erb's testimony must be excluded as unreliable because he fails to consider certain rules and regulations that they assert are applicable to the Offering.  Principally, Defendants claim that he did take into account the fact that the Offering was conducted pursuant to the Multijurisdictional Disclosure System  ("MJDS"), and was not a purely U.S. Offering. Def. Mem. at pp 18-19.  The MJDS allows the shares of foreign issuers, such as Central Fund, to trade on U.S. exchanges if they satisfy the disclosure requirements of the issuer's principal location.  This argument is a red herring because the disclosure requirements of the MJDS have little if any bearing on the merits of the SEC's claims in this case.

 Moreover, the MJDS is irrelevant to Mr. Erb's principal conclusion that the Offering was a firm commitment offering because it involved the underwriters' actual purchase of the offered shares rather than one in which selling agents commit only to using their best efforts to sell as many shares as possible. Erb Report at ¶¶ 44, 76.  Therefore Mr. Erb's failure to discuss directly the requirements of the MJDS in no way undermines the reliability of his primary opinion.

experience by consulting a number of authoritative sources (see, e.g., ¶¶ 30-35, 44, A-15 to A-16) SEC rules and regulations (¶¶ 36-39, A-13 to A-14) and other public information (¶¶41-43, A-15 to A-16).   For example, he relies in part on *Guiliano Iannotta, Investment Banking: A Guide to Underwriting and Advisory Services* (Springer-Verlag, 2010) for the industry's definitions of firm commitment and best efforts offerings.  *Id*. at ¶ 30.  His analysis is consistent with such guidance. While Defendants may disagree with the conclusions Mr. Erb reaches in reliance on those sources as well as his own knowledge and experience, such disagreement does not render his analysis unreliable. *R.F.M.A.S., Inc.,* 748 F.Supp.2d at 269.

Defendants' suggestion that Mr. Erb's methodology and analysis are flawed because he failed to consider or misconstrued certain facts and testimony in reaching his conclusions is equally unavailing.  In particular, Defendants suggest that: (1) although Mr. Erb relies in part on the Offering documents, he failed to take into account the fact that those documents do not expressly use the term "firm commitment underwriting"  and testimony by witnesses[7] from the lead underwriter, CIBC, that the documents appeared to be inaccurate in some minor respects[8] and (2) he failed to consider or misinterpreted deposition testimony by Mr. Kuchanny and the CIBC witnesses that according to Defendants show, among other things,  that all the Offering shares had been sold before the shares were priced and the underwriting agreement was formally executed.  Def. Mem. at pp 15-18, 20-23.  The first contention is incorrect and the second simply reflects

---

[7]      David Scott and Scott Smith were CIBC's principal representatives for the Offering.

[8]      For example,, Stott Smith of CIBC  testified that a clause in the Prospectus Supplement authorizing the underwriters to reduce the price of offering shares after closing under certain circumstances was more appropriate in the context of a "'bought deal" than an "overnight marketed" one.  Smith Dep. Tr. 83:18-85:10.  Given Mr. Erb's conclusion that both types of transactions constitute firm commitment offerings, the fact that such language was apparently inadvertently included in the Offering documents is inconsequential.

Mr. Erb's disagreement with Defendants as to how the subject testimony should be construed.

Mr. Erb's Report is replete with references to specific language in the Offering documents (the Base Shelf Prospectus, the Prospectus Supplement and the Underwriting Agreement) upon which he relies to support his conclusion that the Offering was conducted on a firm commitment basis. See, e.g., Erb Report at ¶¶ 77-80.   As discussed above, the key component of Mr. Erb's analysis is the underwriters' purchase of the Offering shares at the moment when the deal was priced, a fact the Offering documents plainly establish even if they do not use the term "firm commitment" or contain superfluous language that might not strictly apply to an "overnight marketed" transaction. *Id*   As Mr. Erb testified during his deposition he believes these references support his conclusion even if the Offering documents do not specifically call the transaction a firm commitment underwriting.  See, e.g*.,* Erb Dep. Tr. 43:2-44:22**;** 79:18-80:16.

Finally, to the extent Defendants argue that Mr. Erb either ignores or misconstrued documents and testimony, their contention simply reflects that the parties interpret documents and testimony differently and do not support a claim that Mr. Erb's analysis is unreliable. Challenges to the factual basis of an expert witness' testimony go to the credibility of that testimony and do not provide grounds for barring such testimony. *U. S. Bank Nat'l Assoc. v. PHL Variable Life Ins. Co*., 12 Civ. 6811, 2015 WL 3932791 (S.D.N.Y. June 22, 2015) at *7; *Boykin v. Western Express, Inc*., No. 12 Civ. 7428, 2015 WL 539423 (S.D.N.Y. Feb. 6, 2015) at *6 ("'Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.'")   Such is not the case here.

### III.     MR. ERB'S TESTIMONY IS NOT BARRED BY FED. R. EVID. 403.

Mr. Erb's proffered testimony is relevant to a central issue in this case. Moreover, his analysis is sound and can be supported by the relevant documents, testimony and other authorities cited.  There is no "unfair" prejudice in Mr. Erb's opinions and analysis.  Rather, Defendants' only face the unfortunate "fair" prejudice that results from testimony directly relevant to the primary issue in the case which validly undermines the Defendants' position.  Accordingly Mr. Erb's testimony will assist the fact finder at trial and thus is admissible under Fed. R. Evid. 403.

### CONCLUSION

For all the foregoing reasons, the Defendants' motion to preclude the testimony of the SEC's expert should be denied.

Respectfully submitted,


_____/S/ Charles Stodghill
Charles D. Stodghill (pro hac vice)
Lauren B. Poper
Division of Enforcement
Securities and Exchange Commission
100 F Street, NE
Washington, DC  20549
(202) 551-4413 (Telephone)
(202) 772-9246 (Facsimile)
E-Mail: stodghillc@sec.gov

Attorneys for Plaintiff


Dated:  October 7, 2015